GARRETT, J.
|,The defendant, Carl L. Scott, was found guilty as charged of forcible rape and second degree kidnapping following a jury trial. He was sentenced to 25 years at hard labor, with credit for time served, with the first two years to be served without benefit of parole, probation, or suspension of sentence, for second degree kidnapping. As to the forcible rape conviction, he was sentenced to 25 years at hard labor. The trial court ordered that the sentences be served consecutively. Through counsel, the defendant appeals his sentence as excessive. He also filed a pro se brief raising a speedy trial issue. We affirm the defendant’s convictions and his sentence for second degree kidnapping. We vacate his illegally lenient sentence for forcible rape and remand for resentencing. We also instruct the trial court to comply with the sex offender notification and registration requirements on remand.
FACTS
The following facts were elicited during the defendant’s jury trial. On the evening of November 6, 2012, the victim walked to the defendant’s house in Shreveport to find a friend of hers who, along with several other people, was watching an NBA game there. After the game, the other people left. The victim and the defendant smoked crack cocaine; the victim also drank a beer. The defendant had a weed pipe that he wanted to sell, so the victim suggested several friends who might be interested. After walking to their homes and trying unsuccessfully to sell it, the victim ended up back at the defendant’s house. She wanted to rest awhile before she walked home. While she was on the couch, the defendant tried to get close to her. She went to the bedroom to get away from him, but he followed her. |2Realizing that the defendant was not going to stop follow- *251 tag her, the victim got up to leave. As she approached the front door in the living room, the defendant hit her in the back of the head with a bat. She fell to her knees and screamed for help as the defendant continued hitting her. During the ensuing struggle, the victim managed to take the bat from the defendant and hit him across the back. However, he overpowered her and regained control of the bat. As he continued to hit her, she fell to her knees. Every time she tried to get up, he hit her again. He struck her in the face around her eye with the butt of the bat. The victim began bleeding profusely from her many injuries.
The defendant then made the victim remove her clothes and forced her into the bedroom, where he tied her to the bed with neckties around her wrists and ankles. The victim testified that the defendant raped her repeatedly — vaginally and anally. He also forced her to perform oral sex on him. During this time, the defendant had a large knife and told the victim that, if she tried to fight, he would cut her. The victim was covered in blood and still hemorrhaging; it became difficult for her to breathe. After a while, he told her that he had to go somewhere and threatened her if she tried to escape. Once she was confident the defendant was gone, she freed herself, broke the bedroom window, and escaped out of the house, still naked and bleeding. The defendant, along with his brother and grandmother, were standing outside in front of his grandmother’s house, which was across the street. The defendant grabbed the victim and tried unsuccessfully to drag her back into his house. She pulled away and screamed for help. The defendant’s grandmother gave her a duster to put on. The victim was then | stold to “get out of there.” The victim fled to a friend’s house, which was nearby. The police and paramedics were called.
The victim was taken to University Health, where she was treated for her injuries and underwent a sexual assault examination. She suffered two severe scalp lacerations, a left forearm fracture, a fractured jaw, a laceration over her eyebrow, other facial fractures, and bruising all over her body. She was hospitalized for several days. Subsequent testing conducted on the material recovered during the sexual assault examination found DNA matching that of the defendant.
Officers secured the crime scene and obtained a search warrant for the defendant’s house. In the living room, officers found a black baton in a chair, blood on the floor, and a knife under the couch. In the bedroom, the bed was drenched in blood, neckties were tied to the bed posts, and the window was broken. Numerous photographs of the crime scene and the victim’s injuries were introduced into evidence.
In a post-Miranda statement, the defendant claimed that he had consensual sex with the victim on the night of the incident.[1] According to him, after they had sex, the victim pulled a knife on him and demanded more crack cocaine. He told her that he did not have any more. The defendant admitted that he picked up a bat and beat the victim in the head and face. He then dragged her back to the bedroom and tied her to the bed with neckties because he did not want her to leave. After the victim escaped, he tried unsuccessfully to drag her back into his house. He then returned to his | ¿house to grab some clothes before fleeing. The bat he admittedly used to beat the victim was never recovered.
*252 The jury trial began on August 5, 2015, and on August 12, 2015, the jury unanimously found the defendant guilty as charged of both offenses. The jury obviously rejected the defendant’s claim to the police that he and the victim had engaged in consensual sex and, instead, found the victim to be a credible witness.
A sentencing hearing was conducted on August 20, 2015, The trial court considered the defendant’s criminal history from Tex? as, which .included three misdemeanors, two felony drug offenses, and a second degree felony assault conviction from 2006. Defense counsel requested that concurrent sentences be imposed, and the state voiced the victim’s desire for maximum consecutive sentences. In reviewing the sentencing guidelines set forth in La. C. Cr. P. art. 894.1, the court stated that there was an undue risk that the defendant would commit another offense if not incarcerated, that he was in need of correctional treatment, and that a lesser sentence would deprecate the seriousness of his crimes. As aggravating factors, the court noted that the defendant’s conduct during the commission of the offenses manifested deliberate cruelty to the victim, that he used threats or actual violence in the commission of the offenses, that the offenses resulted in significant permanent injury or economic loss to the victim; and that thfe defendant used a dangerous weapon in the commission of the offenses. The court found that none of the mitigating factors were applicable. The trial court noted that both offenses were crimes of violence.
The trial court then sentenced the'defendant to 25 years at hard labor, with credit for time served, with two years to be served without the benefit |fiof parole, probation, or suspension of sentence, for second degree kidnapping, and 25 years at hard labor, with credit for time served, for forcible rape. The sentences were ordered to be served consecutively. No motion to reconsider sentence was filed. This appeal followed.
EXCESSIVE SENTENCE

Law

Both forcible rape[2] and second degree kidnapping are punishable by imprisonment at hard labor for not less than five nor more than 40 years, with at least two years of the sentence being imposed without benefit of parole, probation, or suspension of sentence. See La. R.S. 14:42.1 and 14:44.1.
La. C. Cr. P. art. 881.1(E) precludes a defendant from presenting sentencing arguments to the court of appeal which were not presented to the trial court. Accordingly, when, as in this case, a defendant fails to file a motion to reconsider sentence, the appellate court’s review of a sentencing claim is limited to the bare claim that the sentence is constitutionally excessive. State v. Mims, 619 So.2d 1059 (La. 1993); State v. Smith, 50,342 (La.App. 2 Cir. 1/13/16), 184 So.3d 241.
Constitutional review turns upon whether the sentence is illegal,- grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La. 1992); State v. Davis, 50,149 (La.App. 2 Cir. 11/18/15), 181 So.3d 200; State v. Smith, supra.
A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than the |fipurposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La. 1993). A sentence is grossly disproportionate if, when the *253 crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La. 1/15/02), 805 So.2d 166; State v. Smith, supra.
The trial court is given wide discretion in the imposition of sentences within the statutory limits. Such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 2003-3514 (La. 12/13/04), 893 So.2d 7; State v. Diaz, 46,750 (La.App. 2 Cir. 12/14/11), 81 So.3d 228; State v. Hebert, 50,163 (La.App. 2 Cir. 11/18/15), 181 So.3d 795.
A presentence investigation report is an aid to help the court, not a right of the defendant, and the court is not required to order a presentence investigation. La. C. Cr. P. art. 875; State v. Houston, 50,126 (La.App. 2 Cir. 11/18/15), 181 So.3d 188.
When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently, unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. State v. Hebert, supra.
Although La. C. Cr. P. art. 883 favors imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the offender’s past criminality or other ^circumstances in his background or in the commission of the crimes justify treating him as a grave risk to the safety of the community. State v. Walker, 2000-3200 (La. 10/12/01), 799 So.2d 461; State v. Simpson, 50,334 (La.App. 2 Cir. 1/13/16), 186 So.3d 195.
When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. However, the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. State v. Robinson, 49,677 (La.App. 2 Cir. 4/15/15), 163 So.3d 829, writ denied, 2015-0924 (La. 4/15/16), 191 So.3d 1034.

Discussion

The trial court did not abuse its discretion by imposing consecutive 25-year sentences. Because the defendant failed to file a motion to reconsider sentence, he is entitled to review of his sentence only for constitutional excessiveness, without consideration of the alleged errors regarding the failure to order a presentence investigation report, consideration of mitigating factors, and the consecutive nature of his sentences. Nevertheless, his claims are without merit. The defense did not request a presentence investigation report prior to sentencing, did not object to the lack thereof at the time of sentencing, and failed to present any evidence in mitigation. The trial court was not required to order a presentence investigation report, and the record shows that the court adequately complied with La. C. Cr. P. art. 894.1 and considered the appropriate factors in determining the defendant’s sentences, as noted above. Also, although the trial court did not specifically provide reasons for ordering that the sentences be served consecutively, the court did not abuse |Rits discretion in doing so because the record adequately supports the imposition of consecutive sentences in this case. The trial court heard all of the gruesome *254 evidence outlined herein and also had the benefit of seeing all of the physical, evidence which was admitted during the trial. The particularly brutal actions of the defendant justify treating him as a grave risk to the safety of the community.
Further, the defendant’s sentences are not constitutionally excessive. The defendant viciously beat the victim with a bat, forced her to the bedroom, tied her to the bed, threatened her with a large knife, and repeatedly raped her vaginally and anally and forced her to perform oral sex while she was bleeding profusely from her injuries. The victim sustained severe injuries and likely only survived because she was able to escape through a window and run, naked and covered in her own blood, down the street to seek help. Considering the extremely violent nature of the defendant’s crimes and the serious injuries sustained by the victim, the midrange sentences imposed by the trial court do not shock the sense of justice, nor are they grossly disproportionate to the severity of the offenses.
This assignment of error is without merit.
PRO SE ASSIGNMENT OF ERROR
In his pro se assignment of error, the defendant argues that the trial court erred in not giving him a contradictory hearing within 30 days of filing a pro se motion for speedy trial under La. C. Cr. P. art. 701(F).
Once a defendant has been convicted, any allegation that La. C. Cr. P. art. 701 has been violated becomes moot. State v. Bradham, 46,985 (La.App. 2 Cir. 2/29/12), 87 So.3d 200.
This assignment lacks merit.
JcERROR PATENT
Our error patent review reveals that the defendant’s sentence for forcible rape is illegally lenient. The transcript of the sentencing reflects that the trial court failed to restrict at least two years of the defendant’s sentence from benefit of parole, probation, or suspension of sentence, as required by La. R.S. 14:42.1(B).[3] Because the language of the sentencing provision gives the trial judge discretion in determining the exact length of time that benefits were to be withheld, the jurisprudence dictates that the defendant’s sentence for forcible rape must be vacated and the case remanded for resentencing in compliance with La. R.S. 14:42.1(B). State v. Drew, 47,531 (La.App. 2 Cir. 11/14/12), 107 So.3d 748; State v. Carter, 43,304 (La.App. 2 Cir. 6/18/08), 987 So.2d 364, writ denied, 2008-2752 (La. 9/25/09), 18 So.3d 86.
Additionally, the trial court failed to inform the defendant of the sex offender notification and registration requirements, as mandated under La. R.S. 15:543. The defendant’s conviction of forcible rape, a “sex offense” under La. R.S. 15:541, requires that defendant be subjected to the sex offender notification and registration requirements. See La. R.S. 15:542. The trial court is required to notify a defendant convicted of a sex offense in writing, using the form contained in La. R.S. 15:543.1, of the registration and notification requirements. See La. R.S. 15:543. The statute further requires that an entry *255 be made in the court minutes stating that the written notification was provided. The record does not indicate that the defendant | mwas provided with either written or oral notification of the sex offender registration requirements. As a result, remand is required for the purpose of providing the appropriate written notice to the defendant of the sex offender registration requirements.[4] See State v. Drake, 46,232 (La.App. 2 Cir. 6/22/11), 71 So.3d 452; State v. Preston, 47,273 (La.App. 2 Cir. 8/8/12), 103 So.3d 525.
CONCLUSION
The defendant’s convictions and his sentence for second degree kidnapping are affirmed. The illegally lenient sentence for forcible rape is vacated. The matter is remanded for resentencing on the forcible rape conviction and for compliance with the sex offender notification and registration requirements.
CONVICTIONS AND SECOND DEGREE KIDNAPPING SENTENCE AFFIRMED; FORCIBLE RAPE SENTENCE VACATED; REMANDED FOR RESENTENCING ON FORCIBLE RAPE AND COMPLIANCE WITH SEX OFFENDER NOTIFICATION AND REGISTRATION REQUIREMENTS.

. He initially denied having sex with the victim. However, he changed his story after the detective informed him that DNA testing on the rape kit samples from the victim’s sexual assault examination would reveal if he had had sex with the victim.

. In 2015, "forcible rape” was renamed "second degree rape,”

. We note that the minutes incorrectly indicate that the defendant's sentence for each count was imposed with a restriction of two years without benefit of parole, probation, or suspension of sentence. Where there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Robinson, 49,319 (La.App. 2 Cir. 10/1/14), 151 So.3d 627, writ denied, 2014-2111 (La. 5/1/15), 169 So.3d 371.

. We recognize that the defendant in this case was 56 years old at the time of sentencing and obviously will be incarcerated for a lengthy period of time. Nevertheless, our legislature mandates compliance with the sex offender notification and registration requirements under all circumstances.