Judgment rendered April 5, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,955-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

Versus

JEREMY JERMAINE GREEN                       Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 18-CR-6786

Honorable Marcus Lamar Hunter, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Douglas Lee Harville

JEREMY JERMAINE GREEN                    Pro Se

ROBERT STEPHEN TEW                       Counsel for Appellee
District Attorney

SHIRLEY M. WILSON DAVIS
MARK KEITH WHITE
Assistant District Attorneys

* * * * *

Before STONE, STEPHENS, and ELLENDER, JJ.

**STEPHENS, J.**

This criminal appeal arises out of the Fourth Judicial District Court, Parish of Ouachita, State of Louisiana, the Honorable Marcus L. Hunter, Judge, presiding. Defendant, Jeremy Jermaine Green, was convicted by a unanimous jury of attempted manslaughter, a violation of La. R.S. 14:31 and La. R.S. 14:27, and possession of a firearm by a felon, a violation of La. R.S. 14:95.1. Consecutive ten-year hard labor sentences were imposed by the trial court. Green has appealed, urging excessiveness of his sentences and ineffective assistance of counsel. For the reasons set forth below, the convictions and sentences of the defendant, Jeremy Jermaine Green, are affirmed.

## FACTS AND PROCEDURAL BACKGROUND

On January 25, 2019, Green was charged by bill of information with attempted second degree murder, a violation of La. R.S. 14:30.1 and La. R.S. 14:27, and possession of a firearm by a felon, a violation of La. R.S. 14:95.1. On January 21, 2019, Green waived formal arraignment and entered a plea of not guilty.

On September 30, 2019, a jury trial commenced. The evidence at trial included the following. Monroe Police Officer Timothy Miller testified that on December 8, 2018, he and Detective Duane Cookson were dispatched to apartment #121 at Parkview Apartments at 1101 Richwood Road #2 in Monroe, Louisiana, in response to a call about a shooting. While interviewing witnesses, they learned that the victim, Jesse Smith, was shot in his right thigh by "JJ," also known as Jeremy Green. Among those interviewed were Evelyn Collins, Tameika Holmes Robinson, Hilton Collins, and Mario Jones. Other testimony at trial established that, on the

night of the shooting, there had been between seven to ten persons "in and out of" the apartment. According to both Ms. Collins and Ms. Robinson, Smith got to the apartment before Green. At one point, Green and Smith, who knew each other, got into an argument. Smith was sitting in a chair with his back against the wall. Ms. Robinson and Ms. Collins both testified that they saw Green fire two times at Smith. One shot hit Smith in the right thigh, and as Smith was running, Green fired the second shot, which struck the kitchen wall.

Former Monroe Police Officer Eddie Webb testified that he spoke with Smith at Ochsner LSU Medical Center (formerly E.A. Conway Hospital). Smith told Ofc. Webb he had been shot at the Parkview Apts. and identified Green as the shooter. At trial, however, Smith testified that he did not know who shot him and did not remember telling Officer Webb who shot him. On cross-examination, Smith denied even knowing Green and said he couldn't point him out in the courtroom.[1]

---

[1] Prior to Smith's testimony at trial, *outside of the jury's presence*, the assistant D.A. informed the trial court that Smith was a defendant in a pending case in which Green is a co-defendant. The D.A. had contacted Smith's defense counsel to let him know Smith would be testifying in the instant case. Because Smith is represented by counsel in the other matter, and the State's attorney will be calling him to testify as he is the victim in this case and Green is the defendant in the instant case, the D.A. felt that Smith should have his attorney (or another Indigent Defenders' Board ("IDB") attorney) tell him that the D.A. will not be questioning Smith about the facts of *the other* case. The prosecutor also wanted a defense attorney representing Smith to convey to him that the reason Smith is in jail was not related to the instant case, but arises out of "something else."

Until Smith's attorney could appear, another attorney with the IDB met with Smith and urged him not to testify at all, but to assert his Fifth Amendment right not to incriminate himself, in spite of the State's assurances that it would not question Smith about the other pending matter. The trial court ruled that Smith had been subpoenaed and would testify, but that the State and Green's attorney would have to tailor its questions very narrowly and limit them to the instant case. The trial court explained the situation to Smith, including the presence of his appointed counsel, and trial resumed (with Smith's own attorney representing his interests.)

Green took the stand at trial. He admitted that he was at the apartment, and that he and Smith had been friends "for a minute," which he explained was a time period of many months. Green, however, denied arguing with Smith and testified that he left the apartment prior to the shooting. Green also denied having a gun the night of the shooting and stated that he did not know who shot Smith, but it was not him.

Zac Southwell testified that he was Green's probation officer in connection with a conviction for attempted distribution of marijuana in 2016. Green received a four-year probation term in exchange for his guilty plea. As a convicted felon, Green is not able to legally possess or own a firearm. At the time of his arrest for the instant offenses, Green had served just over two years of his probation term.

Green was found guilty of attempted manslaughter, a responsive verdict to the charge of attempted second degree murder, and possession of a firearm by a felon by a unanimous jury. Shortly thereafter, he was sentenced to serve ten years' imprisonment at hard labor on each count. The trial court ordered that the sentences be served consecutively with each other and to any time Green will serve as a result of his probation revocation. On January 15, 2020, Green filed a motion to reconsider sentence, which was denied following a hearing held on July 16, 2020. The instant appeal ensued.

**DISCUSSION**

*Excessiveness of Sentence*

The trial court sentenced Green to ten years at hard labor on each conviction and ordered that the sentences be served consecutively with each other and to Green's probation revocation sentence. According to appellate

3

counsel, although the trial court did give detailed reasons for the sentences imposed, because it did not give particular reasons for imposing consecutive sentences or adequately explain its reasons for imposing consecutive sentences, Green's sentences should have been imposed concurrently. As such, the consecutive ten-year terms are excessive, and the sentences should be vacated and the matter remanded for resentencing.

According to the State, the record provides a factual basis for the sentences imposed, including the trial court's decision to make the sentences consecutive. The State points out that the trial court acknowledged Green's status as a third felony offender, as well as his extensive criminal history. Of particular concern to the trial judge was that Green shot at a person he considered a friend. The trial court further noted the potential harm caused by Green who shot in a small apartment in which several persons were present.

The trial court also expressed concern about phone calls made by Green from jail to State witnesses during jury selection and trial. The judge felt that the defendant had intimidated the victim, a conclusion the judge came to after seeing the victim avoid eye contact with Green during trial. The victim also refused to identify the defendant as the person who had shot him, although while in the hospital, the victim told police officers that Green had shot him to keep him from identifying the defendant as the fourth shooter in another shooting. It is the State's argument that the trial court did not abuse its great discretion in imposing consecutive sentences in this case.

La. R.S. 14:31(B) provides that a person found guilty of manslaughter:

shall be imprisoned at hard labor for not more than forty years. However, if the victim killed was under the age of ten years, the offender shall be imprisoned at hard labor without benefit of probation or suspension of sentence, for not less than ten years nor more than forty years.

La. R.S. 14:27(D)(3), which provides the penalties when a person is found guilty of attempted crimes, states that he:

shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.

La. R.S. 14:95.1(B) provides that a person found guilty of possession of a firearm by a person convicted of certain felonies, which includes any violation of the Uniform Controlled Dangerous Substances Law (La. R.S. 40:961 et seq.), which is a felony:

shall be imprisoned at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.

In reviewing a sentence for excessiveness, an appellate court uses a two-step process. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. art. I, § 20 if it is grossly out of proportion to the severity of the crime or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the

5

sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Bell*, *supra*.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Bell*, *supra*. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *Id.*; *State v. Allen*, 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 15-0608 (La. 1/25/16), 184 So. 3d 1289. On review, the appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Bell*, *supra*; *State v. Kelly*, *supra*.

When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. *State v. Dale*, 53,736 (La. App. 2 Cir. 1/13/21), 309 So.3d 1031; *State v. Hebert*, 50,163 (La. App. 2 Cir. 11/18/15), 181 So. 3d 795. It is within the court's discretion to make sentences consecutive rather than concurrent. *State v. Dale*, *supra*; *State v. Robinson*, 49,677 (La. App. 2 Cir. 4/15/15), 163 So. 3d 829, *writ denied*, 15-0924 (La. 4/15/16), 191 So. 3d 1034. The trial court's failure to articulate specific reasons for consecutive sentences will not require remand if the record provides an adequate basis to support separate

sentences. *State v. Williams*, 52,052 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1200.

As set forth above, attempted manslaughter has a maximum sentence of imprisonment at hard labor for 20 years. Possession of a firearm by a convicted felon has a maximum sentence of imprisonment at hard labor for 20 years without the benefit of probation, parole, or suspension of sentence, and a fine of at least $1,000. The sentences imposed, ten years of imprisonment at hard labor on each conviction, were well below the statutory maximum of both offenses. The crux of Green's argument is that the cumulative 20-year sentence created by the consecutive terms ordered by the trial court was an abuse of the trial court's discretion and as such, is unconstitutionally excessive.

The trial court, at Green's sentencing, gave its reasons for imposing sentence as required by La. C. Cr. P. art. 894.1. Under article 894.1(A), the court found that the following applied to the defendant: (1) there was an undue risk that, during the period of a suspended sentence of probation, the defendant will commit another crime; and, (3) a lesser sentence would deprecate the seriousness of the defendant's crime. Under subsection (B) of article 894.1, the court found the following applicable: (1) the offender's conduct during the commission of the offense manifested deliberate cruelty to the victim; (5) the offender knowingly created a risk of death or great bodily harm to more than one person; (6) the offender used threats of actual violence in the commission of the offense; (8) the offender committed the offense in order to facilitate or conceal the commission of another offense; (10) the offender used a dangerous weapon in the commission of the offense; (11) the offense involved multiple victims or incidents for which

7

sentences have not been imposed; and, (12) the offender was persistently involved in a similar offense not already considered as criminal history or as a part of a multiple offender adjudication.

The record in this case supports the trial court's imposition of ten-year consecutive sentences. First, the trial court's reasons for sentencing, while not specifically setting forth the judge's rationale for the consecutive sentence, are meticulous and detailed. The trial court cited the article 894.1 factors it specifically considered and, *before* imposing consecutive sentences, discussed the facts of this case, emphasizing that the shooting occurred at a party with several persons present, several of whom were able to identify Green as the shooter. Immediately after stating that the defendant's sentences were to be consecutive, the trial judge told Green that this case was "considerably troubling" to him because "by your statement you called [the victim] your friend." The trial court also discussed the phone calls Green made from jail to people involved in this case. Finally, the trial court was disturbed by the fact that Smith, the victim, would not look toward the defendant, refused to identify him as the shooter, and would not even acknowledge that the two men knew each other.

As so eloquently stated by the Louisiana Supreme Court in *State v. Lewis*, 09-1404, p. 7 (La. 10/22/10), 48 So. 3d 1073, 1077-78, the proper perspective from which to approach sentence review in the present case accords paramount importance to the nature of the conduct proved at trial. In considering the nature of an offense for purposes of sentencing, both the trial court and the reviewing court may assess whether the crime for which the defendant has been convicted adequately describes his conduct when the

conviction is for a lesser included responsive verdict to the crime charged. *Id.* at 78.

This Court notes that Green got a significant benefit from the jury's verdict which convicted him of attempted manslaughter when the evidence showed that he was guilty of the charged offense, attempted second degree murder. Consecutive ten-year sentences are clearly supported when all of the above is taken into consideration. The fact that the trial court did not specifically state that consecutive sentences were being imposed "because [reasons]…" would have been almost redundant in light of the extensive analysis the trial court made to support the sentence *in globo*. The same considerations also support a finding that the 20-year cumulative sentence is neither an abuse of the trial court's discretion nor excessive by constitutional standards. This assignment of error is without merit.

### *Ineffective Assistance of Counsel*

Green contends that his attorney provided him with ineffective assistance of counsel by failing to object or file a motion for a mistrial when the prosecutor, in his argument to the jury, improperly referred to inadmissible other crimes evidence. Specifically, Green alleges that the prosecutor, in response to the victim's testimony denying knowing Green, told the jury that the victim knew Green because the two men were on another charge together. According to Green, the trial judge did not admonish the jury to disregard this statement, which was highly prejudicial to him. Green further urges that his attorney was ineffective for failing to file a motion for mistrial, which could have changed the outcome of the trial and the sentence he received.

9

Green also argues that his trial counsel was ineffective by failing to object to/file a motion to suppress witness testimony that he claims was inconsistent with the evidence presented at trial and constituted hearsay.

Finally, Green argues that his attorney's performance was defective because he did not file any defense motions and refused to advocate on his behalf throughout the entire proceeding. The defendant claims his counsel failed to subject the state's case "to a meaningful adversarial testing." Green accuses his trial attorney of failing to act in a professional manner and lacking diligence, competence, and overall a trial strategy. Because his attorney did not, prejudice must be presumed. Green urges this Court to reverse his sentence and remand the matter to the trial court with instructions.[2]

The Supreme Court set out the two-prong test for a defendant claiming ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984): that counsel's performance was deficient; and the deficiency prejudiced his defense. *State v. Hilliard*, 52,652 (La. 8/14/19), 278 So. 3d 1065, 1079-80, *writ denied*, 19-01701 (La. 7/24/20), 299 So. 3d 68.

Both the Louisiana and federal constitutions guarantee a criminal defendant's right to the effective assistance of counsel. U.S. Constitution amend. VI; La. Constitution art. I, § 13; *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963); *State v. Brooks*, 94-2438 (La. 10/16/95), 661 So. 2d 1333; *State v. Bayles*, 53,696 (La. App. 2 Cir. 11/17/21), 329 So. 3d 1149; *State v. Turner*, 52,510 (La. App. 2 Cir.

---

[2] The State's brief was filed before Green's *pro se* brief, so it has set forth no argument on this issue.

10

4/10/19), 267 So. 3d 1202, *writ denied*, 19-00873 (La. 9/24/19), 279 So. 3d 386; *State v. Mansfield*, 50,426 (La. App. 2 Cir. 2/24/16), 190 So. 3d 322.

Under the standard for ineffective assistance of counsel set out in *Strickland v. Washington, supra*, adopted by Louisiana's Supreme Court in *State v. Washington*, 491 So. 2d 1337 (La. 1986), a reviewing court must reverse a conviction if the defendant establishes that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and counsel's inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect. *State v. Ball*, 19-01674 (La. 11/24/20), 305 So. 3d 90; *State v. McGee*, 18-1052 (La. 2/25/19), 264 So. 3d 445; *State v. Bayles, supra*; *State v. Turner, supra*.

Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because this provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. *State v. McGee, supra*; *State v. Ward*, 53,969, p. 17 (La. App. 2 Cir. 6/30/21), 324 So. 3d 231, 240. When the record is sufficient, however, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. *Id.*; *State v. Frost*, 53,312 (La. App. 2 Cir. 3/4/20), 293 So. 3d 708, *writ denied*, 20-00628 (La. 11/18/20), 304 So. 3d 416.

A deficient performance is established by showing that the attorney's actions fell below the standard of reasonableness and competency required for attorneys in criminal cases and is evaluated from the attorney's perspective at the time of the occurrence. *State v. McGuire*, 50,074 (La. App. 2 Cir. 9/30/15), 179 So. 3d 632; *State v. Grant*, 41,745 (La. App. 2 Cir.

4/4/07), 954 So. 2d 823. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. *State v. Vallo*, 51,046 (La. App. 2 Cir. 1/11/17), 212 So. 3d 1198; *State v. Grant*, *supra*.

A close rereading of his trial transcript, which belies each one of Green's ineffective assistance of counsel claims against his trial attorney, is as far down their respective trails as we are going to run chasing after the three "rabbits" that the defendant has dressed up and alleged as errors on the part of his clearly competent counsel. First, the prosecutor did not make any mention, in closing argument or at any other time during trial, to **any** inadmissible other crimes evidence within the jury's hearing. Thus, there was nothing upon which an objection or motion for mistrial could have been based. The failure to object to an alleged error for which there is no legal basis may not be the proper subject of a claim of ineffective assistance of counsel. *See*, *State v. Leger*, 05-0011 (La. 7/10/06), 936 So. 2d 108, *cert. denied*, 549 U.S. 1221, 127 S. Ct. 1279, 167 L. Ed. 2d 100 (2007); *State v. Allen*, 03-2418 (La. 6/29/05), 913 So. 2d 788, *cert. denied*, 547 U.S. 1132, 126 S. Ct. 2023, 164 L. Ed. 2d 787 (2006); *State v. Grant*, *supra*. Not only did this claim lack legal basis, it had no basis in fact. Be that as it may, it has been addressed, and Green is precluded from asserting it as grounds for an ineffective assistance of counsel claim in the future. *See*, *State v. Mayo*, 54,059, p. 4 (La. App. 2 Cir. 11/17/21), 332 So. 3d 757, 763 (on reh'g), *writs denied*, 22-00410, 21-01887 (La. 4/20/22), 336 So. 3 464, 465.

Next, Green's claim about inconsistent testimony that he labels as "hearsay" has no merit. The objectionable testimony was allegedly

12

inconsistent statements made by Ms. Robinson and Ms. Collins. Any internal inconsistency in the women's testimony was for the jury to consider and factor into their deliberations. When there is conflicting testimony as to factual matters, the resolution of which depends on witness credibility, this is a matter of weight, not sufficiency of the evidence. *Tibbs v. Florida*, 457 U.S. 31, 46, 102 S. Ct. 2211, 2220-21, 72 L. Ed. 2d 652 (1982). There was nothing in the witnesses' testimony, from a legal standpoint, to which trial counsel could have objected. The time for defense counsel to address the issue of witness credibility, or lack thereof, would have been in his closing argument. The record shows that Green's attorney did just that. In fact, defense counsel did an admirable job in his closing argument to the jury highlighting what he noted as discrepancies and inconsistencies in the State's witnesses' testimony. This allegation does not support an ineffective assistance of counsel claim and cannot be asserted again. *State v. Mayo*, *supra*.

In his final claim about his trial counsel's alleged deficient performance, Green contends that his attorney failed to file a single defense motion or subject the prosecutor to "meaningful adversarial testing." The record contains several defense motions filed by trial counsel, and our review of the transcript shows that counsel was active in his defense of Green. As alluded to above, the defendant's trial attorney made a vigorous closing statement in defense of his client. In fact, the jury came back with a responsive verdict of attempted manslaughter against Green, who was charged with attempted second degree murder, largely due to the efforts of his attorney, given the overwhelming evidence against Green in this case. There is nothing whatsoever to support the defendant's conclusory

13

allegations.  This assertion is without merit, and cannot be raised again on a post-conviction claim of ineffective assistance of counsel, should one be made by the defendant.  *Id.*

### *Error Patent Review*

We note several errors patent in the record.  First, on the conviction for possession of a firearm by a convicted felon, the trial court imposed a term of ten years at hard labor without denial of the benefit of parole, probation, or suspension of sentence restrictions or the mandatory fine required by La. R.S. 14:95.1.  As such, it is illegally lenient.  *State v. Brown*, 52,501, p. 13 (La. App. 2 Cir. 1/16/19), 264 So. 3d 697, 705, *writ denied*, 19-0297 (La. 6/3/19), 272 So. 3d 892.

When a trial court fails to order that a sentence should be served without benefit of parole, probation, or suspension of sentence as mandated by statute, those required restrictions are self-activating, and there is no need to remand for correction.  La. R.S. 15:301.1(A); *State v. Williams*, 00-1725 (La. 11/28/01), 800 So. 2d 790; *State v. Brown*, *supra*.  Regarding the failure to impose the mandatory fine, the State did not object, and Grant is clearly not prejudiced by the trial court's omission.  Therefore, this Court will not remand the case for correction of the sentence to include such a fine.  *State v. Brown*, *supra* at 706; *State v. Reynolds*, 49,258 (La. App. 2 Cir. 10/1/14), 149 So. 3d 471.

Next, La. C. Cr. P. art. 930.8(C) requires the trial court to inform the defendant of the limitations period for filing an application for post-conviction relief at sentencing.  If a trial court fails to properly advise the defendant of the time period limitations for filing, the appellate court may

14

correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion.

The record does not indicate that the trial court advised the defendant of the prescriptive period for seeking post-conviction relief as required by La. C. Cr. P. art. 930.8. By way of this opinion, this Court hereby advises the defendant that no application for post-conviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C. Cr. P. art. 914 or 922.

## CONCLUSION

For the reasons set forth above, the convictions and sentences of defendant, Jeremy Jermaine Green, are affirmed.

**AFFIRMED.**

15